IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:25-cv-00447-MR

| | | |
|---|---|---|
| **DAVID GORDON OPPENHEIMER,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**RESORT LIFE PROPERTIES, LLC,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Default Judgment [Doc. 13].

## I. PROCEDURAL BACKGROUND

On December 19, 2025, the Plaintiff David Oppenheimer initiated this action against the Defendant Resort Life Properties, LLC, asserting claims for copyright infringement and violation of the Digital Millennium Copyright Act ("DMCA"). [Doc. 1]. On January 7, 2026, the Plaintiff filed an affidavit of service indicating that the Defendant had been served. [Doc. 6]. On February 26, 2026, the Plaintiff filed a Motion for Entry of Default against the Defendant. [Doc. 9]. On March 3, 2026, pursuant to Federal Rule of Civil Procedure 55(a), the Clerk made an entry of default against the Defendant. [Doc. 10]. On June 15, 2026, the Court ordered the Plaintiff to "file an

appropriate motion or otherwise take further action with respect to the Defendant" within fourteen (14) days of the entry of the Order. [Doc. 12]. On June 29, 2026, the Plaintiff filed the present Motion for Default Judgment, asking the Court to grant default judgment against the Defendant and award monetary relief to the Plaintiff. [Doc. 13].

## II. STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Once a defendant has been defaulted, the plaintiff may then seek a default judgment. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the Clerk of Court may enter the default judgment. Fed. R. Civ. P. 55(b)(1). In all other cases, the plaintiff must apply to the Court for a default judgment. Fed. R. Civ. P. 55(b)(2).

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact." Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (citation omitted). A defendant, however, "is not held to admit conclusions of law." Id. (citation and alteration omitted). The Court therefore must determine "whether the facts as alleged state a claim" for relief.

GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).

## III. PLAINTIFF'S FACTUAL ALLEGATIONS

The well-pleaded factual allegations of the Plaintiff's Complaint having been deemed admitted by virtue of the Defendant's default, the following is a summary of the relevant facts.

The Plaintiff is engaged in the professional photography business. [Doc. 1 at ¶ 2]. The Plaintiff registered the photograph at issue in this matter (the "Work") with the Register of Copyrights at the U.S. Copyright Office. [Id. at ¶ 12; Doc.1-1]. The Plaintiff is the owner of the copyright of the Work. [Doc. 1 at ¶ 13]. The Work consists of an aerial photograph of the Sugar Mountain Golf Course. [Doc. 1-2].

The Plaintiff makes his photographs available online for printing and licensing through his website. [Doc. 1 at ¶ 2]. The Plaintiff applied his copyright management information ("CMI") on the Work when it was published in 2013. [Id. at ¶¶ 10-11].

The Defendant is a dissolved North Carolina Limited Liability Company that runs a resort hospitality business. [Id. at ¶¶ 3, 9]. In connection with that business, the Defendant copied and displayed the Work on its website's homepage which showcases available reservations. [Id. at ¶¶ 4, 17, 31].

The Defendant removed the CMI from the Work displayed on its website. [Id. at ¶ 24].

On or about January 28, 2023, the Plaintiff discovered the Defendant's infringement on the copyright related to the Work. [Id. at ¶ 17]. The Plaintiff notified the Defendant of its infringement on August 29, 2024 and September 16, 2024. [Id. at ¶ 23]. Despite those communications, the Defendant has continued to infringe on the Plaintiff's copyright by displaying the Work on its website. [Id.].

## IV. DISCUSSION

### A. Copyright Infringement

To establish copyright infringement, a plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of his work that are original." dmarcian, Inc. v. dmarcian Eur. BV, 60 F.4th 119, 138 (4th Cir. 2023) (citation and alterations omitted). Here, considering the well-pleaded factual allegations of the Complaint as admitted by the Defendant by virtue of the default, the Plaintiff has established that he owns a valid copyright in the Work at issue, [Doc. 1 at ¶¶ 12-13], and that the Defendant copied the Work at issue, [id. at ¶¶ 16-23]. The Court concludes, therefore, that the Plaintiff's well-pleaded factual allegations establish his claim for copyright infringement against the Defendant.

### B. DMCA Violation

The DMCA prohibits a person, "without the authority of the copyright owner or the law," either to "intentionally remove or alter any copyright management information," 17 U.S.C. § 1202(b)(1), or to "distribute" work "knowing that copyright management information has been removed or altered," id. § 1202(b)(3). The DMCA requires that the action be taken by a person "knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement." Id. § 1202(b).

Considering the admitted factual allegations, the Plaintiff has established that the Defendant violated the DMCA by posting the Work on its website with the CMI removed, without authorization. [Doc. 1 at ¶¶ 4, 24]. The admitted allegations also establish that the Defendant did this while knowing or having reasonable grounds to know that the CMI had been removed or omitted without authorization and that the action would induce, enable, facilitate, and/or conceal an infringement of the Plaintiff's copyright. [Id. at ¶¶ 37-39]. The Court concludes, therefore, that the Plaintiff's well-pleaded factual allegations establish his claim for a DMCA violation against the Defendant.

### C. Damages

#### 1. Default Judgment Damages Standard

Because a party's default does not suggest that the party has admitted the amount of damages that the moving party seeks, the Court still must "assure that there is a legitimate basis for any damage award it enters." Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003); see also Ryan v. Homecomings Fin. Network, 253 F.3d at 780 ("[D]efault is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."). As such, "even upon default, a court may not rubber-stamp the non-defaulting party's damages calculation." Overcash v. United Abstract Grp., Inc., 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008). Instead, the moving party must "provide the court with sufficient information to ascertain monetary damages with reasonable certainty." Int'l Painters & Allied Trades Indus. Pension Fund v. Dettrey's Allstate Painting, LLC, 763 F. Supp. 2d 32, 36 (D.D.C. 2011). That information may be presented by way of an affidavit, but an affidavit that "consists only of conclusory statements generally will not be sufficient for determining default judgment liability." Lopez v. XTEL Constr. Grp., No. PWG–08–1579, 2011 WL 6330053, at *3 (D. Md. Dec. 16, 2011) (citing Hartford Fin. Servs. Grp., Inc. v. Carl J. Meil, Jr., Inc., No. WDQ–10–2720, 2011 WL 1743177, at *8 (D. Md. May 5, 2011)).

### 2. Damages for Copyright Infringement

Under the Copyright Act, a plaintiff may elect to recover either actual or statutory damages. 17 U.S.C. § 504(c) (A plaintiff "may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements . . . with respect to any one work . . . in a sum of not less than $750 or more than $30,000," or, where "infringement was committed willfully, . . . a sum of not more than $150,000."). Here, the Plaintiff elects to recover statutory damages. [Doc. 13 at 16]. Within the permissible range of statutory damages, the Court enjoys wide discretion to set the amount of damages. See F.W. Woolworth Co. v. Contemp. Arts, Inc., 344 U.S. 228, 231-32 (1952). Although "there need not be a direct correlation between statutory damages and actual damages, the statutory award should bear some relation to actual damages suffered." Reilly v. Commerce, No. 15CV05118PAEBCM, 2016 WL 6837895, at *9 (S.D.N.Y. Oct. 31, 2016) (citations and quotations omitted).

> Although the Fourth Circuit has not specifically described how the statutory damages should be determined, the Second Circuit has provided guidance regarding factors to be considered, as follows: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence

> concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

Oppenheimer v. Holt, No. 1:14-CV-000208-MR, 2015 WL 2062189, at *2 (W.D.N.C. May 4, 2015) (citing Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir. 2010)). As such, the Court will examine the factors discussed in Bryant to determine the appropriate statutory damages award in this case.

Under the first factor, the Complaint's well-pleaded factual allegations establish that the Defendant willfully infringed on the Plaintiff's copyright by intentionally removing the CMI and continuing to display the Work on its website after receiving two notifications of the infringement. [Doc. 1 at ¶¶ 23, 31, 37]. The Defendant's default also supports its willfulness.

Under the second factor, the Complaint does not contain any allegations that the Defendant reaped any specific profits as a result of its infringement, only that it displayed the Work on the homepage "to promote its business activities." [Id. at ¶ 3]. The Plaintiff, however, contends that the Defendant's failure to participate in this case has made it impossible to ascertain the amount of profit received from the Defendant's infringement and that "the Work serves a central commercial function" by depicting the rental property. [Doc. 13 at 15, 18-19]. Although the Plaintiff correctly notes that the Defendant's default has made it difficult to ascertain its profits, the

use of the Work to identify a rental property in Sugar Mountain appears to be a minor factor in any profit that the Defendant received. The Defendant posted several other photographs depicting the beauty and surroundings of its rental properties in the Banner Elk, Sugar Mountain, and Beach Mountain areas. [Doc. 1-2]. These other photographs would appear to be more material to any potential rental than simply showing the location of a single rental property.

As to the third factor, the Complaint does not contain any allegations regarding the Plaintiff's actual lost revenue. In support of the Motion for Default Judgment, the Plaintiff submitted a declaration stating that the fair market valuation for use of the Work in the manner in which it was displayed is $3,686. [Doc. 13-1 at ¶ 20]. The valuation was obtained from a photography pricing program called fotoQuote, which calculated the price based on variables associated with the Work that the Plaintiff entered into the program. The $3,686 price from fotoQuote, however, does not show the revenue lost due to the Defendant's copyright infringement because it does not accurately reflect the price that the Defendant would have paid to license the Work. A party seeking to advertise various vacation rental properties across three areas would not reasonably pay $3,686 for a photograph showing one property location. Moreover, the Plaintiff entered variables into

the fotoQuote program that increase the quote beyond the fair market value that a licensee would be willing to pay. For example, the Plaintiff put into fotoQuote that the image size would be up to a quarter of the screen, [id. at 24], even though the Defendant's website shows the Work fills only a small portion of a collage at the bottom of the homepage, [Doc. 1-2]. Thus, the $3,686 price from fotoQuote is not reflective of the Plaintiff's lost revenue here.[1]

Under the fourth, fifth, and sixth factors, the Court notes the need for a statutory damages award that will provide a deterrent effect on the infringer and third parties and acknowledge the Defendant's lack of cooperation in this case. Under the sixth factor, however, the Court observes that the Plaintiff seeks a very high damages award relative to the harm caused by the Defendant's actions and that the Plaintiff has filed several other copyright infringement lawsuits in this District within the last three years alone. See,

---

[1] The Plaintiff further argues that his $3,686 valuation should be multiplied by a factor of three to five because "the Work has suffered a measurable diminution in value as a result of Defendant's unauthorized and widespread dissemination, which undermines Plaintiff's ability to control licensing and maintain the Work's exclusivity in the marketplace." [Doc. 13 at 15]. In support of his argument, the Plaintiff cites Leonard v. Stemtech Int'l Inc., 834 F.3d 376, 394 (3d Cir. 2016). The copyrighted images at issue in Leonard, however, were scientific images that were so valuable and rare that a premium multiplier had to be applied to their value to accurately reflect the fair market value of the copyright. That is not the case here, where the Work lacks special value and the Plaintiff admits that he only would have charged approximately $3,686 to license the Work. [Doc. 13 at 14; Doc 13-1 at ¶ 20]. Moreover, the Plaintiff provides no evidence to support a finding that $11,058 to $18,430 reflects his loss in revenue resulting from the Defendant's infringement.

e.g., Oppenheimer v. Michaud et al., No. 1:23-cv-00265-MR (W.D.N.C. Sept. 10, 2023) (Reidinger, J.); Oppenheimer v. Mountaintop Golf and Lake Club, Inc. et al., No. 1:24-cv-00110-MR-WCM (W.D.N.C. April 10, 2024) (Reidinger, J.); Oppenheimer v. Highland Falls Country Club, Inc., No. 1:24-cv-00133-MR (W.D.N.C. April 30, 2024) (Reidinger, J.); Oppenheimer v. Flower Bridge Design LLC et al., No. 1:25-cv-00036-MR (W.D.N.C. Feb. 5, 2025) (Reidinger, J.); Oppenheimer v. Rodeo Rest. Grp. LLC et al., No. 1:25-cv-00106-MR (W.D.N.C. April 22, 2025) (Reidinger, J.); Oppenheimer v. Ridgeline Inv. Props. LLC et al., No. 1:26-cv-00010-MR (W.D.N.C. Jan. 10, 2026) (Reidinger, J.); Oppenheimer v. Long et al., No. 5:23-cv-00124-KDB-SCR (W.D.N.C. Aug. 10, 2023) (Bell, J.); Oppenheimer v. McCurry et al., No. 5:24-cv-00070-KDB-SCR (W.D.N.C. Feb. 23, 2024) (Bell, J.).

The numerous filings suggest that the Plaintiff's course of conduct is to seek "copyright infringement damages not to be made whole, but rather as a primary or secondary revenue stream." ME2 Prods., Inc. v. Ahmed, 289 F. Supp. 3d. 760, 764 (W.D. Va. 2018) (quoting Malibu Media, LLC v. [Redacted], No. PWG-14-261, 2017 WL 633315, at *3 (D. Md. Feb. 15, 2017)). In such cases, the "trend in courts across the country . . . [is] to award the minimum statutory award of $750 per violation." Id.; see, e.g., Oppenheimer v. Griffin, No. 1:18-CV-00272-MR-WCM, 2019 WL 7373784,

at *7 (W.D.N.C. Dec. 31, 2019) (collecting cases). Accordingly, the Court concludes that the minimum award of $750 without interest for the Defendant's infringement is sufficient to compensate the Plaintiff and deter future copyright infringement.

### 3. Damages for DMCA Violation

Under the DMCA, "[a]t any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages *for each violation* . . . in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3)(B) (emphasis added). Although undefined, courts have uniformly held that "the term 'each violation' is best understood to mean each violative act performed." McClatchey v. Associated Press, No. 305-CV-145, 2007 WL 1630261, at *6 (W.D. Pa. June 4, 2007) (citing 17 U.S.C. § 1203(c)(3)(B)); see also Agence France Presse v. Morel, 934 F. Supp. 2d 547, 583 (S.D.N.Y. 2013). That is, the Plaintiff is entitled to damages for each instance where the Defendant posted the Work to the internet without the Plaintiff's CMI. See, e.g., Stockwire Rsch. Grp., Inc., 577 F. Supp. 2d at 1267 (finding that defendants posted the protected material "on the internet on three separate occasions, and therefore committed three violative acts"); Granger v. One Call Lender Servs., LLC, 2012 WL 3065271, at *5, (E.D. Pa. July 26, 2012) (finding that the defendants "posted the infringing product onto

the internet on six separate occasions . . . thereby committing six violative acts”).

Here, the Complaint and the other evidence establishes that the Defendant committed one violation by posting the Work without the Plaintiff’s CMI to its website’s homepage. [Doc. 1 at ¶ 4]. The Plaintiff contends that the Defendant’s removal of the CMI and distribution of the Work without the CMI are two separate DMCA violations. [Doc. 13 at 22]. Because the Defendant posted the Work to only one website without the CMI, however, its conduct constitutes one DMCA violation. As discussed above, the harm resulting from the Defendant’s acts is relatively minimal, rendering even the minimum award under the DMCA generous both in terms of remuneration and recovery for the Plaintiff and in terms of sanction and deterrence for the Defendant. Accordingly, the Court awards the minimum of $2,500 in statutory damages for the DMCA violation.

**D. Attorneys’ Fees and Costs**

The Copyright Act and DMCA provide that the Court in its discretion may allow the recovery of costs and may also award reasonable attorneys’ fees to the prevailing party. 17 U.S.C. §§ 505, 1203(b)(4)-(5). “In deciding whether to award fees under the DMCA, the Court may consider the motive, reasonableness of the fee, deterrence and compensation, and the ability of

the nonmoving party to pay." Dahn World Co., Ltd v. Chung, No. CIV. A. RWT06-2170, 2009 WL 277603, at *2 (D. Md. Feb. 5, 2009) (citing Rosciszewski v. Arete Assocs., Inc., 1 F.3d 225, 234 (4th Cir. 1993) (considering the same four factors under the Copyright Act)).

As a threshold matter, the Plaintiff is eligible for an award of attorneys' fees as the prevailing party before this Court. 17 U.S.C. §§ 505, 1203(b)(5). The Defendant's lack of participation in this action weighs in favor of awarding the Plaintiff fees and costs. The other relevant factors, however, weigh against it. The Plaintiff's motive in bringing this claim does not support such an award because the Plaintiff appears to be using the copyright laws as a source of revenue, rather than as redress for legitimate injury. Moreover, the awarding of attorneys' fees and costs would not serve the goals of deterrence or compensation given the size of the statutory damages awards in relation to the Defendant's wrongful conduct here. The judgment against the Defendant will serve as an adequate deterrent and the Plaintiff's attorneys can be compensated out of that award. Accordingly, the Court will deny the Plaintiff's request for attorneys' fees and costs.

### F. Permanent Injunction

The Plaintiff also seeks a permanent injunction

> [a]gainst RLP, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with RLP, prohibiting them from (a) directly or indirectly infringing Oppenheimer's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Oppenheimer's copyrighted photographs or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Oppenheimer.

[Doc. 13 at 24].

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." Accordingly, the Court will enter a permanent injunction against the Defendant.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Default Judgment [Doc. 13] is **GRANTED IN PART** and **DENIED IN PART**, and **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

1. The Plaintiff shall have and recover of the Defendant statutory damages in the amount of $750 pursuant to U.S.C. § 504(c), and statutory damages in the amount of $2,500 pursuant to 17 U.S.C. § 1203(c)(3)(B), for a total judgment of $3,250.
2. The Motion is **GRANTED** to the extent that a permanent injunction is entered against the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with the Defendant, prohibiting them from (a) directly or indirectly infringing the Plaintiff's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from the Work or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted work by the Plaintiff. This injunction shall take effect seven days from the issuance of this order.
3. The Motion is **DENIED** with respect to the Plaintiff's request for attorneys' fees and costs.

A judgment consistent with this Memorandum of Decision and Order will be entered contemporaneously herewith. The Clerk of Court is respectfully directed to close this civil case.

**IT IS SO ORDERED.**

Signed: August 31, 2026

Martin Reidinger
Chief United States District Judge